| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>BOONSAKDI BOONMALERT,<br><br>                        Plaintiff,<br><br>-against-<br><br>CITY OF NEW YORK; ANDREW SCHWARTZ;<br>SOCIAL SERVICES UNION, LOCAL 371; and<br>JOHN and JANE DOE (said names being fictitious,<br>the persons intended being those who aided and<br>abetted the unlawful conduct of the named<br>Defendants),<br><br>                        Defendants. | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #:<br>DATE FILED: 4/12/17<br><br><br>16 Civ. 4171 (KMW) (KNF)<br><br>**OPINION & ORDER** |
|---|---|

KIMBA M. WOOD, District Judge:

On June 3, 2016, Boonsakdi Boonmalert filed this action pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 42 U.S.C. §§ 1983 and 1985, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"), claiming discrimination, retaliation, and a hostile work environment on the basis of his age. The City of New York and Andrew Schwartz (the "City Defendants") move to dismiss Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the City Defendants' motion to dismiss is GRANTED.

## I. BACKGROUND[1]

Plaintiff, who was 69 years old at the time the amended complaint was filed, Am. Compl. ¶ 9, ECF No. 21, has been employed by the City of New York since April 2001, *id.* ¶ 10. Since 2003, he has worked as an associate contract specialist in the New York City Department of Small Business Services ("SBS"). *Id.* ¶ 12. Plaintiff has always received at least satisfactory job evaluations, *id.*

---

[1] The following facts are taken from the amended complaint and are assumed to be true for purposes of City Defendants' motion to dismiss. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Shipping Fin. Servs Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) ("When considering a motion to dismiss . . . for failure to state a cause of action, a court must accept as true all material factual allegations in the complaint.").

¶ 24, and has never been formally disciplined, *id.* ¶ 25. During the relevant time periods, Schwartz was either the First Deputy Commissioner, Acting Commissioner, or Deputy Commissioner for Legal Affairs of SBS, and was accordingly an indirect supervisor of Plaintiff. *Id.* ¶ 20.

Plaintiff alleges that there are three other associate contract specialists—whose names, ages, civil service levels, education levels, and lengths of employment are not included in the amended complaint—who work under the same supervisors as Plaintiff, have less experience and are younger than Plaintiff, and yet were paid more money than he was. *Id.* ¶¶ 26-27.

In 2012, Plaintiff turned 65, at which point City Defendants began to ask him about retirement, reminded him that he could retire, and encouraged him to retire. *Id.* ¶ 28, 35-37. In one instance, Schwartz directed the Executive Director of Human Resources, Myrna Mateo, to submit Plaintiff's paperwork to the New York City Employee Retirement System ("NYCERS"). *Id.* ¶¶ 38-39. Mateo submitted the paperwork to Schwartz for review, but Plaintiff went to Mateo's office to stop the process. *Id.* ¶¶ 40-41.

In September 2012, City Defendants moved Plaintiff from the Budget Review Unit ("BRU") to the Workforce Development Division Unit ("WDDU"). *Id.* ¶ 29. The WDDU position was in a more remote and less prestigious part of SBS, and the work was "out of his civil service title." *Id.* ¶ 30. In addition, Plaintiff continued to work on BRU matters, resulting in his being "required to simultaneously perform the functions of two separate full time staff persons" without additional compensation. *Id.* These additional tasks, without additional support or resources, were designed to set Plaintiff up to fail, and he experienced stress, insomnia, and panic attacks. *Id.* ¶¶ 31-32.

In June and July 2013, Plaintiff and a colleague, Kevin Ying, filed grievances against SBS with the Office of Collective Bargaining. *Id.* ¶ 48. The two grievances were consolidated, and the Social Services Union, Local 371 ("Local 371") represented both individuals through attorney Gary Maitland. *Id.* ¶¶ 50, 52. Ying has the same civil service and office title as Plaintiff, *id.* ¶ 69, and has

2

less education and professional experience than Plaintiff, *id.* ¶ 70, but was in his 40s, *id.* ¶ 67. Throughout the grievance process, Schwartz would suggest that Plaintiff retire, and suggested that Plaintiff's refusal would deprive Ying of the raise that he needed to support his family. *Id.* ¶ 55. Schwartz also conveyed to Maitland that Plaintiff intended to retire, *id.* ¶ 56, and Maitland began to insist that Plaintiff retire as a condition of resolving his grievances against SBS, *id.* ¶ 57.

Hearings on these grievances were held on November 12, 2014, and February 12, 2015. *Id.* ¶ 49. On March 12, 2015, Plaintiff was presented with a proposed settlement agreement, which was drafted by Local 371 and Schwartz. *Id.* ¶¶ 58-59. The proposed settlement agreement stated that Plaintiff would receive an eight percent higher rate of pay until December 31, 2015, at which point Plaintiff's pay would revert to the original, lower amount if he did not retire. *Id.* ¶¶ 60, 62.

In June 2015, Maitland received an offer from SBS in which Boonmalert and Ying would each receive a "one-time lump sum payment that represents the 12% raise for the period 7/9/13 (date the grievance was filed) to 12/31/15 to resolve the grievance for this period." Renaghan Decl. Ex. C, ECF No. 28.[2] The offer stated that "SBS is still calculating the lump sum, but indicated it would probably come out to around $17,000. After 12/31/15, they are, of course, free to refile their grievance." *Id.* Ying appears to have accepted this offer. His signed settlement agreement states that Ying would receive a lump sum of $18,383 to resolve the grievance for the period of July 9, 2013 through December 31, 2015, and does not include a prospective salary increase. *Id.* ¶ 82; *see* Reneghan Decl. Ex. D.[3] Plaintiff did not settle his grievance. Am. Compl. ¶ 82.

---

[2] Although the Court is generally constrained to the pleadings on a Rule 12(b)(6) motion, *see Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006), the Court may consider external documents that are incorporated by reference or "where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint," *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)). Because Plaintiff's and Ying's settlement agreements and the negotiation processes thereto are integral to the discrimination allegations, the Court shall consider them.

[3] An earlier, undated, and unsigned draft of Ying's settlement provided that he would receive a twelve percent pay increase "from July 9, 2013 to thereafter." Hagan Decl. Ex. 2, ECF No. 35.

3

Finally, Plaintiff filed charges with the Equal Employment Opportunity Commission ("EEOC") on May 20, 2015 and June 8, 2015. *Id.* ¶¶ 7, 80. In the June 8, 2015 complaint, Plaintiff alleges that the City Defendants were "pushing me to retire when I am not ready to do so. In addition, I am being penalized by forcing me to sign the agreement agreeing to retire by December 31, 2015 otherwise I will forfeit the 8% increase." Renaghan Decl. Ex. A. The EEOC issued right-to-sue notices on March 2 and March 31, 2016. Am. Compl. ¶ 7; *see* Renaghan Decl. Ex. B.[4]

The amended complaint states seven claims for relief: (1) age discrimination in violation of the ADEA, § 1983, NYSHRL, and NYCHRL; (2) retaliation in violation of the ADEA, § 1983, NYSHRL, and NYCHRL; (3) hostile work environment in violation of the ADEA, § 1983, NYSHRL, and NYCHRL; (4) conspiracy in violation of § 1985; (5) *Monell* liability under § 1983; (6) breach of duty of fair representation in violation of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185; and (7) aiding, abetting, and inciting in violation of NYSHRL and NYCHRL. Am. Compl. ¶¶ 86-122. Plaintiff has withdrawn his conspiracy claim. Pl. Opp. 19-20, ECF No. 34. Plaintiff's LMRA claim is against only Local 371, which has not appeared in this action. Accordingly, the Court addresses neither the fourth nor sixth causes of action in this opinion.

## II. LEGAL STANDARD

In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for

---

[4] As with the settlement agreement, the Court finds that the EEOC charge of discrimination and right-to-sue notice are integral to the amended complaint and considers them. *See, e.g., Holowecki v. Fed. Express Corp*, 440 F.3d 558, 565 (2d Cir. 2006) ("In reviewing the Rule 12(b)(6) ruling, it is proper for this court to consider the plaintiff['s] relevant filings with the EEOC . . . , none of which were attached to the complaint, because the . . . plaintiff[ ] rel[ies] on these documents to satisfy the ADEA's time limit requirements."). Only the June 8 EEOC charge, and not the May 20 one, were provided to the Court.

4

the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78 (2d Cir. 2015).

## III. DISCUSSION

A. Count I: Age Discrimination

Plaintiff's discrimination claims can be categorized as follows: (1) three unnamed, younger associate contract specialists were paid more than Plaintiff despite having less work experience, Am. Compl. ¶¶ 26-27; (2) Schwartz urged Plaintiff to retire, *id.* ¶¶ 28, 35-37, 55; (3) Mateo prepared the NYCERS papers against Plaintiff's wishes, *id.* ¶¶ 38-41; (4) Plaintiff received less favorable settlement terms through the grievance process than his younger colleague, Ying, *id.* ¶¶ 58-62; and (5) Plaintiff was assigned work from the WDDU in addition to continuing to work on BRU matters without additional compensation, *id.* ¶¶ 29-32. Plaintiff does not satisfy his burden under federal, state, and city law as to any of these five claims.

    i.    ADEA and NYSHRL

ADEA and NYSHRL claims are analyzed under the *McDonnell Douglas* burden-shifting framework. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010). To survive a motion to dismiss, the facts as alleged in the complaint must plausibly support that "the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). The parties do not dispute the first two elements. "A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment. To be 'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Kassner v. 2nd Ave. Delicatessen Inc.*, 496

5

F.3d 229, 238 (2d Cir. 2007) (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)). Materially adverse changes include "a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.* (alteration in original) (quoting *Galabya*, 202 F.3d at 640). Finally, a complaint "need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311; *see Johnson v. Andy Frain Servs., Inc.*, 638 F. App'x 68, 70 (2d Cir. 2016).

As to the first allegation regarding Plaintiff's comparators, the amended complaint fails to plead sufficient facts about the comparators to state a claim for disparate impact discrimination. The amended complaint is "entirely devoid of any details regarding the purported comparators, e.g., who they are, what their positions or responsibilities were at [the company], how their conduct compared to plaintiff['s] or how they were treated differently by defendants." *Haggood v. Rubin & Rothman, LLC*, No. 14 Civ. 34, 2014 WL 6473527, at *12 (E.D.N.Y. Nov. 17, 2014); *see also Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 409 (S.D.N.Y. 2014) ("[Plaintiff's] allegations of gender-based disparate treatment are conclusory. . . . [T]he Amended Complaint does not allege that any similarly situated male employee received more favorable treatment than [plaintiff]—the Amended Complaint fails to identify, let alone describe, any purported comparator."). Without more, these conclusory allegations fail to state a claim.[5]

Plaintiff's second, third, and fourth allegations—regarding retirement discussions, preparing NYCERS papers, and the grievance settlement offers—do not amount to adverse employment actions. "[D]iscussion of retirement is common in offices, even between supervisors

---

[5] The original complaint names the three comparators: Georgette Barnes, Joan White, and Kevin Ying. Compl. ¶ 24, ECF No. 4. Neither complaint describes Barnes. White is alleged to be of retirement age, *see* Am. Compl. ¶¶ 45-47, and therefore is not an appropriate comparator. *See, e.g., Raspardo v. Carlone*, 770 F.3d 97, 126 (2d Cir. 2014) ("[The plaintiff [must] show that the employer treated him or her 'less favorably than a similarly situated employee' *outside of the protected group*." (emphasis added) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)).

6

and employees, and is typically unrelated to age discrimination." *Hamilton v. Mount Sinai Hosp.*, 528 F. Supp. 2d 431, 447 (S.D.N.Y. 2007), *aff'd*, 331 F. App'x 874 (2d Cir. 2009); *see also Katz v. Beth Israel Med. Ctr.*, No. 95 Civ. 7183, 2001 WL 11064, at *14 (S.D.N.Y. Jan. 4, 2001) ("Being yelled at, receiving unfair criticism, receiving unfavorable schedules or work assignments, and being told to retire or work part time if she did not like the schedule also do not rise to the level of adverse employment actions; they do not affect any ultimate employment decisions."). Discussions of retirement and preparing the NYCERS papers did not materially change Plaintiff's working conditions sufficient to state a cause of action for discrimination. And the settlement that Ying ultimately signed was also offered to Plaintiff: in both, the grievant was entitled to a pay increase only until December 31, 2015. *See* Renaghan Decl. Exs. C, D; Hagan Decl. Ex. 2. Plaintiff's contention that the settlement agreement conditioned Plaintiff's salary increase on his retirement by December 31, 2015 misreads that document. *See* Pl. Opp. 8 ("Mr. Boonmalert was offered: a lump sum payment for the time he performed tasks that were outside of his civil service title; and an 8% increase in salary *that was conditioned on his retirement by December 31, 2015.*" (emphasis added)). On the contrary, according to the amended complaint, if Plaintiff did not retire by December 31, 2015, his salary merely would revert to his original salary going forward, rather than the salary with an eight percent increase. Am. Compl. ¶ 60. The settlement agreement did not incentive or encourage his retirement, and the settlement offer and grievance process neither materially altered Plaintiff's terms of employment nor, for that matter, suggested discriminatory animus.

Turning to Plaintiff's fifth allegation, although being assigned additional work from WDDU may amount to an adverse employment action, this claim fails to plausibly allege facts that support the requisite minimal inference of discriminatory motivation. Plaintiff points to repeated discussions about retirement and pressure to retire as raising an inference of discriminatory

7

motivation. Am. Compl. ¶¶ 28-47. However, a person's eligibility for retirement is "analytically distinct" from age. *Dressler v. City Sch. Dist. of the City of N.Y.*, No. 15 Civ. 3696, 2016 WL 4367967, at *4 (S.D.N.Y. Aug. 15, 2016) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611-13 (1993)); *see also id.* ("An attempt to force [plaintiff] to retire . . . unless it is motivated by age-based discrimination . . . is not within the ambit of the ADEA."). On the contrary, "cases that have found references to retirement to be significant involved other indicia of an improper animus." *Hamilton*, 528 F. Supp. 2d at 447. The amended complaint does not allege any statements made by Schwartz or others that suggest improper animus. Because Plaintiff fails to allege facts that support any inference of discriminatory motivation, this claim, too, fails.[6]

    ii.    Section 1983

The Court assumes that Defendant asserts his § 1983 claim as a violation of the Equal Protection Clause. In order to state a § 1983 claim, a plaintiff must plead that he "has been treated differently from others similarly situated." *Bishop v. Best Buy, Co.*, No. 08 Civ. 8427, 2010 WL 4159566, at *11 (S.D.N.Y. Oct. 13, 2010) (quoting *Sweeney v. City of New York*, No. 03 Civ. 4410, 2004 WL 744198, at *5 (S.D.N.Y. Apr. 2, 2004)). "Conclusory allegations of selective treatment are insufficient to state an equal protection claim." *Id.* (quoting *Jarrach v. Sanger*, No. 08 Civ. 2807, 2010 WL 2400110, at *8 (E.D.N.Y. June 9, 2010)). For the reasons that Plaintiff fails to allege facts sufficient to suggest discriminatory motivation under his ADEA claim, Plaintiff's § 1983 claim fails. *See, e.g., Kearney v. Cnty. of Rockland ex rel. Vanderhoef*, 185 F. App'x 68, 70 (2d Cir. 2006); *Bishop*, 2010 WL 4159566, at *12; *cf. Davidson v. Lagrange Fire Dist.*, No. 08

---

[6] Plaintiff's claim also may be barred because he did not exhaust administrative remedies regarding this claim. An EEOC complaint must be filed within 300 days of the act of discrimination, 29 U.S.C. § 626(d)(1), and Plaintiff's complaints were filed in May and June 2015, Am. Compl. ¶ 7. His reassignment to WDDU in September 2012 is well outside of this period. Additionally, the June 2015 EEOC complaint states that the discrimination took place only from July 9, 2013 to March 12, 2015, in which case the September 2012 reassignment may not have been presented to the EEOC. Renaghan Decl. Ex. A.

Civ. 3036, 2012 WL 2866248, at *21 (S.D.N.Y. June 19, 2012) (dismissing § 1983 claim that "is based wholly on the facts underlying" the ADEA claim as duplicative (citing *Jones v. N.Y.C. Health & Hosps. Corp.*, 102 Fed. App'x 223, 226 n.3 (2d Cir. 2004))), *aff'd*, 523 F. App'x 838 (2d Cir. 2013).

    iii.    NYCHRL

Finally, even under the broader standards of the NYCHRL, Plaintiff has failed to state a claim for retaliation. "To state a claim for discrimination under the NYCHRL, a plaintiff must only show differential treatment of any degree based on a discriminatory motive; 'the NYCHRL does not require either materially adverse employment actions or severe and pervasive conduct.'" *Gorokhovsky v. N.Y.C. Hous. Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 114 (2d Cir. 2013)). Plaintiff has failed to plausibly allege that the City Defendants acted with discriminatory motive, nor has he pleaded facts that permit an inference that younger similarly situated individuals received preferential treatment. *See, e.g., Eng v. City of New York*, No. 15 Civ. 1282, 2016 WL 750251, at *3 (S.D.N.Y. Feb. 19, 2016).

                  \*    \*    \*

Accordingly, Count I of Plaintiff's amended complaint is dismissed.

B. Count II: Retaliation

Plaintiff alleges that the City Defendants retaliated against him after he orally complained to Schwartz about the discrimination he experienced, filed a grievance with Local 371, and filed complaints with the EEOC. Am. Compl. ¶¶ 73-83. On a motion to dismiss a retaliation claim, a plaintiff must plausibly allege that: "(1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90 (Title VII); *see also Moore v. Verizon*, No. 13 Civ. 6467, 2016 WL 825001, at *14

(S.D.N.Y. Feb. 5, 2016). As with discrimination claims, "the allegations in the complaint need only give plausible support to the reduced *prima facie* requirements." *Littlejohn*, 795 F.3d at 316. The elements of a retaliation claim under NYCHRL and § 1983 are the same as for federal and state claims. *Mohamed v. NYU*, No. 14 Civ. 8373, 2015 WL 5307391, at *5 (S.D.N.Y. Sept. 10, 2015) (NYCHRL); *Vega*, 801 F.3d at 91 (§ 1983).

The only adverse action that Plaintiff alleges occurred as retaliation relates to the settlements of Plaintiff's and Ying's grievances. *See* Am. Compl. ¶ 82. As discussed above, Plaintiff and Ying received nearly identical settlement offers: Ying received a lump sum payment that covered July 9, 2013 through December 31, 2015, Renaghan Decl. Ex. D, and Plaintiff was offered an 8% raise that covered those same dates, Hagan Decl. Ex. 2. Plaintiff's settlement offer included a salary raise through December 31, 2015, after which his salary would revert to its base level. Am. Compl. ¶ 60. Plaintiff never received a pay increase or lump-sum payment because he never entered into a settlement. *Id.* ¶¶ 82-83.

Even drawing all inferences in Plaintiff's favor, the facts, as alleged in the amended complaint and as presented in the documents integral thereto, do not state a retaliation claim under federal, state, or city law. First, Plaintiff has not alleged an adverse employment action. For retaliation claims, a plaintiff need only "show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 207 (2d Cir. 2006) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). The closest Plaintiff gets to alleging an adverse employment action is stating that he received a less favorable settlement offer than Ying; because Ying's and Plaintiff's settlement offers were comparable, there is no plausible allegation of unfavorable treatment. Moreover, there is no plausible allegation of a causal connection between

10

Plaintiff's EEOC complaint and the grievance settlement offers for the simple reason that Plaintiff has not shown any adverse actions taken against him subsequent to his taking protected actions. In particular, the EEOC complaint describes the settlement offer, and thus the settlement offer cannot be retaliation for the EEOC complaint: "[W]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Chung v. City Univ. of N.Y.*, 605 F. App'x 20, 23 (2d Cir. 2015) (quoting *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001)). Plaintiff's retaliation claims is dismissed.

### C. Count III: Hostile Work Environment

A hostile work environment claim under ADEA, § 1983, and the NYSHRL requires "conduct (1) that is objectively severe or pervasive—that is, if it creates an environment that a reasonable person would find hostile or abusive . . . , (2) that the plaintiff subjectively perceives as hostile or abusive . . . , and (3) that creates such an environment because of plaintiff's [age]." *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001) (citations, quotation marks, and alterations omitted); *see also Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 117 n.2 (2d Cir. 2010); *Kassner*, 496 F.3d at 240-41. "In determining whether the conduct was sufficiently severe or pervasive, courts look at '(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted.'" *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 260-61 (E.D.N.Y. 2012) (quoting *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 82 (2d Cir. 2009)).

Plaintiff's hostile work environment claim fails: he does not plausibly allege that the adverse conduct occurred because of his age and he does not allege facts suggesting severe and pervasive conduct. First, it is "axiomatic" that a hostile work environment claim must allege that

the conduct occurred because of the protected characteristic. *See Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002). As discussed above, Plaintiff has failed to allege discriminatory animus regarding his reassignment, his salary, or his grievance settlement offer. Further, the amended complaint is devoid of allegations that plausibly suggest that discrimination was so severe and pervasive such that the work environment was "permeated with discriminatory intimidation, ridicule, and insult . . . sufficient[] . . . to alter the conditions of [Plaintiff's] employment." *Kassner*, 496 F.3d at 240 (quoting *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999)); *see also, e.g., Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (allegations that "defendants wrongly excluded [the plaintiff] from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her" were insufficient to show pervasive and severe conduct to support hostile work environment claim); *Moore*, 2016 WL 825001, at *13 (allegations that supervisor "persistently questioned [plaintiff] about retiring" were insufficient to support hostile work environment claim); *Wu v. Metro-N. Commuter R.R. Co.*, No. 14 Civ. 7015, 2016 WL 5793971, at *17 (S.D.N.Y. Aug. 4, 2016) ("[C]omments or questions about retirement, without more, do not create a hostile work environment." (quoting *Mazur v. N.Y.C. Dep't of Educ.*, 53 F. Supp. 3d 618, 635 (S.D.N.Y. 2014))).

Hostile work environment claims under the NYCHRL are analyzed under the same code provision as discrimination claims. *Sotomayor*, 862 F. Supp. at 261 (citing *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 74 (N.Y. 2009)). Unlike the ADEA and the NYSHRL, the NYCHRL does not require that discriminatory conduct be severe or pervasive. *Id.* Even under the broader provisions of the NYCHRL, the lack of plausible allegations regarding discriminatory animus, as described above, is fatal to Plaintiff's NYCHRL hostile work environment claim. *See, e.g., Moore*, 2016 WL 825001, at *14 (finding "persistent" questioning about plaintiff's retirement plans and

12

only two comments about plaintiff's age insufficient to state a hostile work environment claim under the NYCHRL).

For these reasons, Plaintiff's hostile work environment claim is dismissed.

D. Count V: *Monell* Liability

Plaintiff asserts a § 1983 *Monell* claim against the City of New York. Am. Compl. ¶¶ 108-14. To prevail on such a claim, a plaintiff must show "that 'action pursuant to official municipal policy' caused the alleged constitutional injury." *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (quoting *Connick v. Thompson*, 561 U.S. 51, 61 (2011)); *see also Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690-92 (1978). Plaintiff's claim fails. Having failed to plausibly allege his § 1983 discrimination, retaliation, and hostile work environment claims, Plaintiff's *Monell* claim "necessarily fails as well." *Kajoshaj v. N.Y.C. Dep't of Educ.*, 543 F. App'x 11, 16-17 (2d Cir. 2013).

Moreover, Plaintiff has not alleged that his rights were violated pursuant to an official policy, practice, or custom. *See, e.g., Corbett v. City of New York*, No. 15 Civ. 9214, 2016 WL 7429447, at *3 (S.D.N.Y. Dec. 22, 2016) ("A plaintiff may satisfy the 'policy or custom' prong in one of four ways: by alleging the existence of (1) a formal policy; (2) actions taken or decisions made by final municipal policymakers that caused the violation of plaintiff's rights; (3) a practice so persistent and widespread that it constitutes a 'custom or usage' and implies the constructive knowledge of policymakers; or (4) a failure to properly train or supervise municipal employees that amounts to 'deliberate indifference to the rights of those with whom municipal employees will come into contact.'" (citations omitted)). Plaintiff argues that Schwartz was a "final *decision maker* for personnel actions as well as internal and external complaints and grievances," and that Schwartz's actions violated Plaintiff's rights. Pl. Opp. 20 (emphasis added). However, Plaintiff does not allege or suggest that Schwartz was a final municipal *policymaker* with regard to the

13

City's equal employment practices. *See, e.g., Hurdle v. Bd. of Educ. of City of N.Y.*, 113 F. App'x 423, 427 (2d Cir. 2004). Plaintiff's *Monell* claim is dismissed.

### E. Count VII: Aiding, Abetting, and Inciting

Plaintiff alleges that the City Defendants, along with "Jane and John Doe named individually and in their official capacities," have aided, abetted, and incited discriminatory practices in violation of NYSHRL and NYCHRL. Am. Compl. ¶ 120; *see id.* ¶¶ 120-22. Plaintiff fails to state a claim. First, because Plaintiff has failed to state a claim for discrimination, retaliation, or hostile work environment, there can be no cause of action for aiding, abetting, and inciting. *See White v. Pacifica Found.*, 973 F. Supp. 2d 363, 378 (S.D.N.Y. 2013). Second, to the extent the amended complaint asserted claims against unnamed defendants, Plaintiff appears to have abandoned those arguments. *See* Pl. Opp. 19 (failing to address "Jane and John Doe" defendants and concluding only that "Plaintiff respectfully asserts that his aiding and abetting claims should not be dismissed against individually named defendant Schwartz"). Count VII is dismissed.

### F. Leave to Amend

Plaintiff requests, in his opposition, leave to amend his complaint. "[I]n the absence of any identification of how a further amendment would improve upon the Complaint, leave to amend must be denied as futile." *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 510 (S.D.N.Y. 2015) (quoting *In re WorldCom, Inc. Sec. Litig.*, 303 F. Supp. 2d 385, 391 (S.D.N.Y. 2004)). Plaintiff provided no such identification. Further, Plaintiff already has amended his complaint in response to the City Defendants' first motion to dismiss, which raised many of the same issues discussed here. Accordingly, the request is denied as futile.

## IV. CONCLUSION

For the reasons set forth above, the City Defendants' motion to dismiss is GRANTED. As all claims against the City of New York and Schwartz have been dismissed, both are terminated from this action. By **April 19, 2017,** Plaintiff shall file a letter about the status of his claims against Local 371. The Clerk of Court is directed to terminate the motion at ECF No. 27.

SO ORDERED.

Dated: April 12, 2017
New York, New York

*/s/ Kimba M. Wood*
KIMBA M. WOOD
United States District Judge